12-025-2011 The Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago 12-025-2011 The Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago Larry Faust was a fireman in the city of Chicago beginning in 1951. In 1964, Mr. Faust was on a fire run and stepping off a fire truck, got entangled in a fire hose and was dragged for one to two blocks and had severe lower leg injuries. He went on duty disability, which was approved by the board, and remained on duty disability the remainder of his life, which was ended in April of 1977. He died from other causes unrelated to the injuries which put him on disability. How do you get past the fact that the pension is a creature of statute? The statute does not provide that this action survives, does it? That we're certain of. Also, it appears that the survival statute does not include this type of an action. So how does this claim survive? Well, that's the dominant issue in this appeal. Certainly. That's why I'm asking you the question. And our position is that the right to a pension of a firefighter and his surviving spouse is not a creature of statute. It is a result of the collective bargaining agreement between the union and the city of Chicago, which provides for pension. The pension code regulates the collective bargaining agreement pension between the pensioner and the city of Chicago. It does not create it. The right to a pension is created by the collective bargaining agreement, codified by statute to carry forward. Also, a pension, a public, and this is a public pension as opposed to a private pension. The public pension is protected by the Illinois Constitution. It's basically a contractual relationship as found in the Illinois Constitution and the case law. It is a contract property slash property right, not the creature of a statute. Do you have a case you can cite for us that says that this survives? Well, there are no, the issue has never come up. The issue has never arisen as to whether the right to, this is the first, well, excuse me, the Berry 2 case, which was before this Court on a Rule, which the Court issued a Rule 23. The same issue, same parties were involved. There was a question of the death of the widow. That was on appeal, right? Mrs. Berry filed suit. She prevailed in that suit. The circuit court there ordered the board to give her the money. The board appealed that. And in front of us, after a year after it was appealed, the court's ruling was appealed, she died during the pendency of that appeal. You're correct. A division of this Court then wrote a Rule 23 order, wherein the board said it abated upon her death. There was already a court order entered based on her suit. She filed it. Her estate didn't file the suit. She filed the suit. And then we followed Rule 366, which covers what happens when somebody on appeal dies. But the underlying issue is whether this property interest survives the death. And in the Rule 23 order, this Court heard the board's arguments that the death abated the claim. Well, it did not abate that claim. She had a judgment. She went to circuit court. She prevailed. In this case, Mrs. Faust never filed suit, did she? I'd like you to answer my question. Did Mrs. Faust file a suit? There's no question about that. So the first time anybody filed suit against the board was her estate some months after she died. Ten months after her death. And that goes back to Justice Harris's question. Since the Survivor Act doesn't provide for it, what case do you have? What do you have? How does it survive? It's not created by the Survivor Act. The pension plan doesn't provide for it. Under what statute can you proceed? Can an estate come in and fight over pension rights? If I can continue, Barry 2 addressed the issue as to the nature of the right and whether the death abated that type of claim, regardless of when the claim was filed. The case hinges on when the case was filed. Well, but I beg you, a reading of Barry 2 is a two-part opinion, if you will, or a two-part decision. The first part dealt with the issue whether death abates the claim. The second part of the order dealt with the question, even if death abated the claim, what happens here? What would happen because this case is different? How is it different? To say that it's different, you're asking us today. You're the one who filed the appeal. Yes. You're asking us in this appeal to hold that estates can sue in court municipal pension funds whenever they believe that the recipient, in this case a lady who was a beneficiary, was cheated by the board. Correct. And we are asking, has any court ever said that? No. Has any statute provided for that? No. Well, the statute would not provide for the survival of a claim where the part of the annuitant has been cheated by the pension board. I don't think that you would ever find that written into a statute. The question is, what is the nature of the claim? Abatement addresses the nature of the claim. That's the crux of this case. What is the nature of her claim? Is it, as some suggest, simply under section 614 of the pension code, or is it something more? The case law says that a public pension is a property right, it vests in the annuitant, whether it's the husband or the surviving spouse, and that a contract right cannot be abrogated. There's no question, sir, and I don't believe the board is arguing, that had she filed, sent back that letter, rather than throw it away or whatever she did with it, she'd have gotten the money and she'd do whatever she wanted with the money. The problem is she didn't do that. And so now what happens then, the question before us is, since she didn't do that, what right does her estate have to come in and complain? Somebody has to have standing or somebody has to have the ability to sue. And in Illinois, not everybody has the ability or standing to sue. But I would suggest that under Berry 2, that issue was addressed. And the fact that a case was filed before her death was not the pivotal point in that opinion. There's no factual issues in dispute either in Berry 2 or in this case. It's really simply a legal issue in all these cases. There's no trial. There's no evidence that's being bickered about. It's a question of law there and here. And on a question of law, the fact remains that this is not a statutory claim. This is a claim created by the collective bargaining agreement protected by the Illinois Constitution. And it's been established in Illinois in a variety of cases. But none of that is filed by an estate. This is a case filed by an estate. None of the cases you cite involve the filing of a claim by an estate. I agree. I agree. There are no cases like this, recorded cases, where an individual dies and an action is brought. But it's our position that if you look at the underlying nature of the right, it matters not when the person died. Because the claim, if it's a contractual claim and the nature of a contractual claim, it survives. Then why do we have a Survivor Act? Well, the Survivor Act allows for the survival of common law actions, which include contract claims. And that's what this is. This is a contract between the city of Chicago and a firefighter and a surviving spouse. They pay into the fund to get this pension. It's a contract. It's plain and simple a contract. I mean, if this was a lawsuit against the Metropolitan Insurance Company, it would be a hands-down winnable issue because it's purely a contract. This, likewise, is a contract. It's not a statutory claim only. It is regulated by statute. But it's created by the collective bargaining agreement and the Illinois Constitution, protected by the Illinois Constitution. There are three entities that may sue or seek redress from a pension board in Illinois, are there not? At least a specific pension board, right? The participant himself, the legal beneficiary, and the surviving spouse. Which of those three things is her estate? Well, Doris Faust is identified under the law as her estate. Her estate is the same as Doris Faust. There's no distinction under Illinois law between a... So her estate is the surviving spouse, even though she's dead. Right. Okay. And again, nobody's ever done that before. But again, nobody's ever ruled you can't either. But, you know, it's interesting. The pension code says that a participant and a beneficiary are one and the same. It makes no distinction. The board's argument is that there should be a distinction between a beneficiary and a participant. Whereas the pension code says there is none. They're the same. Now, Illinois law says if you are an annuitant or a participant and you die, your estate stands in your shoes. They are you, as far as the law is concerned. There's no difference. So, in effect, her estate is the annuitant bringing this action. The representative of the estate is her son, Patrick? No, it's her daughter. Daughter. So it's our position that, you know, although no action was filed prior to her death, if you look at the nature of the action, the type of claim that it really is, it matters not when it's filed. It's as if I had a contract with a person, they reneged on the contract, I die, my estate can bring an action for breach of contract. This is no different. And it doesn't matter that I'm passed. The claim survives the death. It's a common law claim in the nature of a contract action which survives the death. I believe that I ran through my time. You have time for your point. All right. Thank you. Good morning, Your Honors. As you know, I represent the Retirement Board of the Fireman's Annuity and Benefit Fund. The Court has already identified one of the two major impacts that a decision granting the relief sought by the appellant would have. The first is, as you've pointed out, allowing an estate to come back 30 years after a benefit was granted to complain that it was miscalculated for a non-intended beneficiary, i.e., the estate, will have long-term effects on this Board because we'll be subject to You know what really happened here? The Board itself made a determination of miscalculation and offered it to, what, 26 different widows or so? And then told them that they would have to sign basically an application form to claim it. And so this was vested in the decedent, in Miss Espoused, but not carried through because of her age and infirmity. She didn't send in the application form. And it wasn't a period of 30 years of wrongful payment. Maybe it was six or so, I think. Well, aren't they seeking? They're seeking 30 years. They want all the way back to 77. Oh. Even though she was barred by statute from 79 to 95 because at that time, the remarriage, she could not get the benefit. And she was appropriately, the Board took the benefit back. And then appropriately, when the legislature changed the law in 95, they notified her of that and said you can apply if you want to. But to answer your question, Your Honor, first of all, it was the appellate court decisions in predominantly Bertucci and the Berry case that brought to the Board's attention in the fund that widows whose husbands died while on disability, even though they died from a completely unrelated cause, could be eligible for the benefit. Now, it's important that it's eligibility. The plaintiffs and appellants indicate basically this is an automatic benefit that, you know, it's in the record. They're permanently disabled. They never went back. It's an entitlement. It is not a vested benefit. In fact, the language in both the Bertucci case and the Berry case make it very clear from the appellate court that there's a burden of proof here, that they have to come forward, that this was not meant to serve as a life insurance policy. They have a burden of proof. He was declared, every single time he was examined, he was declared 100% disabled. This was a vested pension. There's no question that he was always entitled to these benefits for his surviving spouse. If I can address that, Judge, the procedure is consistent with the statute. The Board was required to reexamine every person on disability annually. That was a statutory obligation. They did it, and he always was found to be 100% disabled. For that time period, but the statute contemplates that a fireman could come back to work. That's part of the statutory structure that the legislature put in place. Nobody gets permanent disability. You have to be reexamined. If the medical evidence supports it, you can stay in disability. If you take a look at these cases, Tonker, Berry, Bell, Bertucci, Berry 1, Berry 2, Hooker, Cunningham, Coleman, O'Callaghan, the Board consistently has taken very strong positions on this, but has been told by the courts that their positions have been incorrect. And that's what Berry 2 is saying right now on this. And so the point is, it's not this, when you talk about something, this was offered to her, as to the other widows, on the recoupment of the monies that should have been paid before and were not. And the only thing that stands between this money going to the family of this firefighter is that it was not, there was no response to an application. And in Bertucci it says you don't need any applications. Respectfully, Judge, that is not the only thing standing between. Because what stands between any widow who applies for Section 6140, the enhanced benefit, consistent with Bertucci and Berry, they have a burden of proof to present medical evidence to the Board sufficient to show that their husbands could never return to work. That's in those cases, that's a requirement. Now, in every case you mentioned, every one of them, Tonkovich, Bertucci, three of the original Berry widows, they all had hearings. The process was always started with an application, a hearing by the Board. Granted, the Board's decisions were then reviewed and reversed on those cases, but they all had hearings, they all made application consistent with what the appellate court said. That's not what, the way I read this record, it was, this was determined by the Board to be given to these widows, but they had to file an application. It wasn't something that preceded it. You've been talking about making some type of a claim in advance. This was something that was already decided by the Board. It was already given to her. The only thing that was the slip in this was that she didn't have the capacity to send back a letter saying, I accept what the Board has given me. This wasn't ground zero. No, well, it was in this sense, Judge. The Board never said you're entitled, if the Board, if that was the Board's position, they would have just sent her a letter with the benefit, here's your benefit. Every widow, after the Bertucci-Berry cases, every widow was notified of the decision, filed an application, every one and every one of those cases, filed an application, was told they had a right to a hearing, and some of them came forward and had hearings, and then decisions were made. It may have been the Bertucci case, but there is a case that says that the Board was wrong in requiring, that the statute does not require that there be this type of application. No, I think. It wasn't necessary. Judge, I think. Instead, once again, the Board, according to these cases, once again, the Board said, you've got to file an application for something we're already telling you you're going to get. As my recollection of the cases is that the issue of the notification from the Board when they granted the regular widow's annuity and not a Section 6142, the Court felt that the failure to tell them, we're granting you this, but we're denying you that, that's the problem that the Court had with the notices. They said that we didn't give them due process notification that we were denying a benefit. Instead, we just told them, well, here's the benefit we're granting you. The second case is everything after Barry, remember, is a question of retroactivity. All those cases that follow Barry are, do you pay back to the date of Bertucci or do you go all the way back to the husband's deaths? So those cases are really a little different. But even in those cases, the Court said the Board's notice needed to tell the widows that they were only granting them benefits either back to the date of Bertucci and denying them all the way back to their husband's deaths. So the problem that the Court had with the Board's procedures was the nature of the notification letters. It wasn't that you're requiring these people to come in and present evidence. Indeed, that would be totally inconsistent with what the Court said in Bertucci and Barry 1, which is, and we had this argument with the Court, is this isn't an insurance policy. It's not meant for every widow whose husband dies. And the Court said, no, no, we agree with you. We agree with you. It's only meant for those widows who can prove through medical evidence and testimony that their husbands were permanently disabled. Let me ask you this. Had Doris, during her lifetime, filed a complaint in circuit court while pending that she died, would there have been any problem with the estate coming in and substituting on her behalf? I don't think so. Well, I think that... Now counsel argues the fact that she pre-deceased the filing of a claim makes no difference. It's an estate. The estate has the claim. It sounds pretty logical to me. Where does it fail? Well, I think, as counsel readily admits, the estate only steps into the shoes of Ms. Faust. It has no greater rights than she had. She never made a claim for the Section 6140 benefits. She never made a claim. I mean, that's undisputed. She was notified. She didn't make a claim. So how does she get rights? How does the estate get rights that are greater than Ms. Faust? You're assuming whether she lived or died, those were issues that the circuit court could have addressed. Well... Those same defenses would probably have been brought up by the board had she been a living plaintiff. Well, that's true. But once again, I go back to if the estate can be substituted for her death during a lawsuit, why not after? Well, I think if there are two... If it is this claim that Mr. Battucci seems to well argue that it's a contract claim. Well, I'd like to address that specifically head-on. This is not a contract claim. Absolutely not. Indeed, the four-count complaint that they filed, the first count against the board sought a return of money that was wrongfully obtained. There is no breach of contract claim in here, and that's with good reason. Because the Pension Protection Clause protects the rights of participants, that is members, who when they join the pension fund and pay in, their rights to benefits cannot be diminished or impaired. That's what the Pension Protection Clause protects, and that's it. It doesn't create a separate right or clause of action for breach of contract. Indeed, the Pension Code, Article VI, along with all the other articles, says that it's the administrative review law that governs all judicial review of any benefits under this Act. So you follow administrative review only. And indeed, Judge Patty dismissed three of the four counts because they were not administrative review claims and specifically found in his orders in the record that it's only administrative review rights that you have here. And indeed, in every one of the widow's cases we've discussed, every one of them came before the appellate court on administrative review because that is the only avenue of relief. There's no contract between the widows and the union or the firefighters. That's a totally separate issue. The Pension Code stands by itself. It was created by the legislature to determine how benefits are to be paid. That's the right that either the widow or the participant moves under to get benefits. It has nothing to do with the contract between the police department and the city. That doesn't create pension rights. That just says, here's what we're going to pay you and here's the work rules and so forth and so on. Nothing to do with pension. So the argument that this is a contractual right is simply wrong. It is not. And it's not vested because she may have a right to apply for the benefit. I'll grant you that. That's a due process right perhaps. And she wasn't denied that. That's not the argument. But she doesn't have a right to the payment of a benefit. She has to prove under the Pension Code that she meets the eligibility requirements to get it. And she filled out the form. The letter that went out, it went from an incohate claim to a cohate claim. That letter went out saying you are entitled to this money. Just send in the application. It's an existing claim. It's an existing granted claim by the board. I think that if you, the language of the letter says you may apply and, indeed, the Bertucci case is the same, the Berry case is the same. They may apply for the benefit. It is not an automatic right. And the board was careful in the letter to say you can come. You can present evidence. You can appear. You cannot appear. You can have a lawyer. The standard, you know, due process notifications that are given to any party to come in and present evidence if they so choose. So the board never admitted nor took a position that she was automatically entitled to this benefit. To the contrary, we've consistently argued in every case that there's a burden of proof here that must be met. In some cases it was met. You said she had a due process right to file a claim, not necessarily any right to receive benefits. Well, why doesn't that statement, your own statement, accrue to the benefit of the estate? Why would the estate not have a due process right to file the claim? And let the court litigate or adjudicate whether or not payments should be made. Well, I'd like to be clear. I said it may be a due process argument. I'm not conceding that, first of all. But second of all, the due process right is a notification and the right to present evidence at a hearing. That's the minimal due process rights that the board and any board is under an obligation to give. That's all that is. But here, again, the right is personal to Ms. Faust. It is not after Ms. Faust's death, the right of this estate or any other estate to come in and start asserting rights on behalf of deceased applicants when the pension code is very clear this is a benefit payable for life. There's no language at all about an estate having standing. And most importantly, the section 2. Well, that would be a reference to the extent of damages. Well, most. You know, what benefits? Yeah, she's entitled until her death. And then the estate would have that benefit accrued. Well, except for the anti-attachment statute, Judge 213, which we argued and which Judge Hyman rightfully pointed out, indicates the intent of the legislature that these benefits are personal in nature and do not survive. Because it has language in there that says you can't assign these. You cannot assign any rights to any benefits that you are in receipt of. I'm not talking about assignment, though. This is a question of survival, not assignment. It's a question of survival and whether or not the action survives. Well, again, we think that the circuit court made the correct analysis here, and we'd ask the court to respectfully affirm the circuit court's decision. Thank you, sir. Thank you. One further question, sir. One other question. Judge Sebastian Patti had this case, and he affirmed he did not dismiss the second count, which is what triggered the ability to do this. And so Judge Hyman, there's an estoppel question here that in my recollection, tell me if you agree or disagree, that Judge Hyman was basically his ruling was not enforced. It was the collateral estoppel came through the ruling of Judge Patti. Well, Your Honor, we addressed that in the briefs. And we think respectfully the Bailey case, which is cited by both sides, but we say supports our position, is that the successor judge, excuse me, the motion to dismiss which Judge Patti ruled on was an interim order only. The Bailey case allows a successor judge, again, if there hasn't been a decision on the merits, which there was not. The record is clear. Judge Patti didn't even discuss abatement at all. The successor judge can and may then consider the ruling because it's interim where there was not a decision on the merits. And it's our position in our briefs that Judge Hyman was clearly within his rights as a successor judge to look at that issue once the whole record had been filed and then make his determination. So we don't think he was a step. So the Bailey case ruling was an interlocutory order, wasn't it? Yes. Yes. Essentially. And that, I mean, there are circumstances. Interlocutory orders can be changed numerous times by the trial court. Yes. We agree, Judge. And that's all that happened here. Thank you. Thank you. Mr. Petrucci. A couple things that I would like to address. First of all, going back to the decisions by the Illinois Appellate Court and what a widow had to do after the Petrucci and Berry decisions were originally came down, there is no requirement to file an application. Absolutely none. The Petrucci case and What's the case for that? You just said based on cases. Well, the Petrucci opinion. Which case held that? Well, the Petrucci opinion never says that a widow has to file a new application. And the opinion states that the widow must demonstrate the permanency of the injury. Okay. What happened, and it's illustrative to figure out, to look at what happened, what the board did after that decision. There were some 30-some widows, and I represented some 20-plus of these widows. None of them presented evidence. Not one. None of them appeared for a hearing. Not one. What happened, and you can look at the record, and it's in the record at 388.413. The board had a meeting. The counsel for the board, who happens to be the same counsel present here and his associates, presented to the board the claims of all these widows who had filed applications. By voice vote, they approved them. Why? They had filed applications. There's no doubt that they had filed applications. But the Petrucci opinion never required a widow to file an application. This was something created by the board. What the Petrucci opinion did is said to the board, look, if they're permanently injured, they're entitled to this money. The board knew they were permanently injured because it had prepared a list of all the widows whose husbands died while on duty disability and sent them the application forms. And when they got the application forms, nothing was done. They simply granted them the pensions under Section 140. No evidence was presented. No evidence was heard. Nobody appeared. It was done by voice vote. They applied. And in O'Callaghan, a division of this court in Rule 23 granted prejudgment interest based essentially on your argument before us. Is that right? Yes, they did. And in Bell, a different division of this court, held no prejudgment interest based on the same argument you're making before us. No. Is that right? No. No? Did Bell grant prejudgment interest? Can I explain the difference? Sure. O'Callaghan was equitable prejudgment interest. In Bell, there was no claim for equitable prejudgment interest. The only claim was for statutory prejudgment interest. It was a different type of interest. Prior to Bell being decided, the Supreme Court decided Kousakis versus the police board, which wiped out statutory prejudgment interest in this case, in these types of cases. So, therefore, Bell, being only statutory prejudgment interest, was not granted. O'Callaghan raised the question of equitable prejudgment interest, not statutory prejudgment interest. And, therefore, equitable prejudgment interest was granted in O'Callaghan. Now, the other issue, which I think is important, is that counsel argues that this widow had no vested benefit. Well, that's not the case. The pension code provides that it's a vested benefit and that a participant's benefit is the same as a beneficiary's. And the Illinois appellate courts have ruled consistently that pension benefits are vested benefits. So, to suggest that this widow did not have a vested benefit is really not the law. Furthermore... But no case has ever, no appellate court has ever held that a state can file actions under these circumstances. There has not been, and I agree, there has not been a circumstance ever presented to this court apart from Berry 2. Well, Berry 2, she filed, she got a judgment. We disagree on that, apparently. We disagree. She won her case in circuit court while a lie. That is different than here. Okay, but if you read, in reading Berry 2, the court points out that there were no factual issues which were of any moment. If you're citing dicta in Rule 23, that's, good luck. Okay, all right. So, those are the primary issues that I wanted to address, that what really happened in this circumstance after Bertucci and Berry, there were no hearings, there were no evidence, and the board simply reviewed the files, found that all of these firefighters had been regularly and routinely and repeatedly found to be permanently disabled and granted the benefits to all these widows. Here, the only difference is no application was filed by the widow. Let's assume you win, right? So, they, the board says, well, if you win, we write the opinion the way you asked us to, we'll first allow every estate of these firefighters or policemen or every other employee of the state of Illinois to file suit if they feel wrong. Is that right? Well, no. They can't. What would stop them legally from doing so other than their conscience? Well, this case involves not future benefits. It involves benefits. It has benefits. It has benefits. They're not asking for benefits for the dead lady. I understand it. They're asking for benefits they feel was due their mom. Their mother, correct. Well, again, we're confusing. It's Doris Faust that's standing here, not the descendants. It is Doris Faust's claim. That's where I'm going, though. So, she's not here. She's dead. Right. She didn't file suit. So, let's say you prevail. Okay. We let you go ahead and you prevail, and the money goes to her estate. It goes to her estate. And her estate has six children. Is that right? I believe so. Four or five. That took the stuff sets. Right, right. Both sides filed for six. Okay. So, in that case, assuming that she's a nice mom and gives her money to the six children equally, then four of the children, who this person, the fireman, never heard about. He has no relation of any kind to these people, will get the money for the pension. Is that also right? It goes to however her estate provided for it. It sure would. Okay. Thank you. But that's no different than if I were to die and left an estate. I mean, why should a firefighter's widow be treated differently than you or I or anyone else? I mean, it's their money. The question is, does the Survivor Act apply to their case? And she didn't file suit. Somehow, and the circuit court tried to draw the analogy that this was like charity. And they used the Creighton decision. You're 100% right. Creighton doesn't apply. Right. So, this is not charity. These firefighters and their widows, they paid for this annuity. It's an annuity. That's what they're entitled to, an annuity. And they paid in the money throughout their career, and they were entitled to whatever. . . This file is about 11 years. 13. That's not the facts of this case. Strictly to the facts of this case. He paid money into the fund. Yes, the facts in this case. Isn't it more likely that this is a matter for the legislature to decide that the action survives? Why should we do this by judicial fiat? Well, I don't think we're doing . . . It seems to me that this is an appropriate matter for the legislature. I don't think the law is being changed. I think you're following the law. When you find that this widow who has an annuity, her estate is entitled to that annuity, because the Illinois Constitution clearly states that it's a contractual relationship. Contract claims survive. That's been the law in this state forever. This is no different than that. And to treat it differently is really not appropriate. It is a contractual claim. That's what she had, that's what she has, and that's what the estate brought. That seems to be our issue. Thank you, sir. Thank you very much. We're taking the matter under advisement.